U.S. Department of Homeland Security
United States Coast Guard

Commanding Officer
United States Coast Guard
Facilities Design & Construction Center (Atlantic)

5505 Robin Hood Rd., Suite K
Norfolk, Virginia 23513-2431
Staff Symbol:
Phone: (757) 852-3449
FAX: (757) 852-3495

4200
Ser. No: 0017K
January 17, 2007

RECEIVED
JAN 16 2007

DHL/FAX

K-Con Building Systems
2728 Spruill Ave
Charleston, SC 29405

Re: Contract No. DTCG47-03-F-3EFK24, Design and Construct Prefabricated Cutter Support Building, Port Huron, MI

Dear Mr. Kiernan:

CONTRACTING OFFICER'S FINAL DECISION

Reference is made to your claim dated December 15, 2006 in the amount of $196,126.38 and 186 calendar days (May 25, 2006).

On January 20, 2004, Contract No. DTCG47-03-F-3EFK24 was entered into between your company and the Government for Design and Construct Prefabricated Cutter Support Building, Port Huron, MI. The contract award price was $582,641.00 with a contract completion date of November 20, 2004.

SUMMARY OF CLAIM

Your claim letter of December 15, 2006, received December 20, 2006, demands payment of $196,126.38 plus interest for additional work and a time extension of 186 calendar days (May 25, 2006).

FINDINGS OF FACT

In connection with your claim, I hereby make the following findings of fact:

This contract was solicited and awarded as a design/build type contract. We did inquire about incorporating customer requested changes such as the eve height of the building and enlarging the MK Shop, however, at no time was a "stop work order" issued or implied regarding our review comments and/or potential changes to the design. Below are our comments directly relating to your letter.

a. 35% DRAWING APPROVAL

(1) Drawing A1. We didn't enlarge the building but reminded K-Con that all the furniture shown on the plans had to fit into the building.

(2) Drawing A1. Provisions for 1" air space is not a change but in accordance with standard building practices for brick veneer walls.

(3) Vision panels in doors are standard building practice for personnel safety.

(4) Hose bibs are in accordance with standard building practices and the International Building Code.

b. 50% DRAWING APPROVAL

(1) The Telecom room comments brought the room into compliance with our conceptual floor plan. The required furniture would not fit in the office area with the oversize telecom room.

(2) You identified exterior lighting in your offer.

(3) The recommendation to reduce the florescent lights from 8' to 4' long was made to avoid conflicts with the monorail hoist.

(4) The following eight mechanical comments were not changes but in accordance with standard building practices and the International Building Code. The articulated welding arm scoop exhaust system was specified in our scope of services and included in K-Con's offer. The ceiling fans were never requested. We included ceiling exhaust fans in our scope of services.

(5) General Comment 1. K-Con included two furnaces in their offer. Based on our technical review we accepted and supported this recommendation. K-Con never provided supporting information as to why they reduced their furnaces to one and whether their was sufficient evidence to support using only one furnace.

(6) General Comment 3. The scope of services required K-Con to maintain the space between 68-72 degrees. Adding heat to a telecom room that already has a large heat load would not meet the scope of service. As a result, our mechanical engineer recommended a mechanical solution for your consideration.

(7) Structural Comment on Drawing S-4. Our comment was limited to requesting clarification of their details.

(8) Telecommunication Comment 2. The louvered panel in the bottom of the door was good design practice to allow the cooler air to enter the telecom room that was displaced by the overhead exhaust fan.

Many of the items identified above were informational and clearly noted areas in which you were not in compliance with the International Building Code and standard construction practices. At no time did you assert that the U.S. Coast Guard comments were a change to your contract and would require a modification to the contract.

DECISION

Based on the above findings, there is no evidence to support your claim. You have provided no information showing why you are not responsible for the delay. Moreover, we are not aware of any event or occurrence that would excuse your later performance. Therefore, it is my final decision to deny your claim as it relates to this issue. I do not intend to reopen or reconsider this matter.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy of the Contracting Officer from whose decision this appeal is taken.

The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly to the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Sincerely,

Cathy Broussard

CATHY BROUSSARD
Contracting Officer