# In the United States Court of Federal Claims

No. 05-1054C
(Filed: January 28, 2014)

*************************************
K-CON BUILDING SYSTEMS, INC.,   *
               *
       Plaintiff,   *  Motion to Dismiss; Motion for Summary
               *  Judgment; Contract to Design and Build
v.             *  Prefabricated Building; Contract Disputes
               *  Act of 1978; Validity of Contractor's Claim;
THE UNITED STATES,     *  Notice of Changes
               *
       Defendant.  *
*************************************

William A. Scott, Charleston, SC, for plaintiff.

Daniel B. Volk, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

   Plaintiff K-Con Building Systems, Inc. filed three suits in this court concerning its contracts with the United States Coast Guard ("Coast Guard") for the design and construction of prefabricated metal buildings in Elizabeth City, North Carolina, St. Petersburg, Florida, and Port Huron, Michigan.  After the court issued summary judgment rulings in each case and held trial in the Elizabeth City case, the parties engaged in settlement discussions.  Those discussions revealed several issues that required resolution prior to any settlement.  Accordingly, the parties have filed the appropriate motions in all three cases.

   In this case, which concerns the building in Port Huron, defendant moves to dismiss a portion of plaintiff's amended complaint for lack of jurisdiction, and moves for summary judgment on plaintiff's remaining claim.  For the reasons set forth below, the court grants both of defendant's motions.

## I.  BACKGROUND

### A.  Solicitation and Contract Award

   During the fall of 2003, the Coast Guard solicited proposals for the design and

construction of a prefabricated structure to serve as a cutter support team building in Port Huron.[1]
Plaintiff responded to the solicitation in December 2003.  The Coast Guard identified three
concerns with plaintiff's proposal, which plaintiff addressed in a January 13, 2004 revised
proposal.  In the revised proposal, plaintiff indicated that it would perform the work as described,
with the drawings and specifications provided by the Coast Guard in the solicitation serving only
as guidelines.

The Coast Guard accepted plaintiff's proposal.  In returning an executed copy of the
contract to the Coast Guard, plaintiff attached a January 19, 2004 letter reiterating its position
that its proposal would take precedence over the solicitation:

> As per our various conversations and e-mails regarding the above
> referenced solicitation and award, this writing will confirm that K-Con's pricing is
> predicated upon utilizing the Specifications and drawings provided by the Coast
> Guard as a performance guideline and that the clarifications outlined in our
> revised proposal dated 13 January 2004 define the Scope of Work to be
> undertaken by K-Con.  In the event of a discrepancy between the specifications
> and the proposed Scope of Work, the proposed Scope of Work will take
> precedence unless negotiated otherwise between K-Con and the Contracting
> Officer.

Contracting officer Cathy Broussard executed the contract on behalf of the Coast Guard on
January 20, 2004, the award effective date.  The initial value of the contract was $582,641 and
the initial completion date was November 20, 2004.  Although the contract was modified on five
occasions, resulting in a final value of $529,271.47, the project completion date was never
extended.

## B.  Contract Performance

Plaintiff received the documentation package for the project from the Coast Guard on
January 27, 2004.  Because the package did not include a reference to its January 19, 2004 letter,
plaintiff sent an electronic-mail message to Ms. Broussard "to be certain that everyone involved
[was] crystal clear that K-Con's performance" would "be in accordance with the clarifications
outlined in [its] proposal and as defined in the referenced letter, and not in strict compliance with
the specifications and/or drawings."  Ms. Broussard responded that she placed the January 19,
2004 "letter behind [her] award document and also put a note in the file in case [she was] not
around that once [plaintiff] clarified [the Coast Guard's] concerns prior to the final proposal, [the

---

[1]  The court derives the facts in this section from its August 19, 2011 Opinion and Order,
K-Con Bldg. Sys., Inc. v. United States, 100 Fed. Cl. 8, 11-20 (2011); the pleadings; and the
exhibits attached to the parties' briefs.  Only the facts relevant to defendant's present motion are
included.  A full recitation of the factual background, including citations to the record, can be
found in the court's prior decision.

Coast Guard] had no other concerns with [the] proposal conflicting with" the solicitation.

Based on the schedule outlined in the contract, plaintiff was to have submitted a 50% design twenty-one days after contract award, which was February 10, 2004. Ms. Broussard acknowledged that "we" might be "a little behind schedule," and requested that plaintiff advise her by March 8, 2004, when it would submit the 50% design. Plaintiff did not respond by the deadline, leading Ms. Broussard to note the overdue 50% design and request an update.

Plaintiff met with the Coast Guard on March 18, 2004, to discuss the Coast Guard's concerns with plaintiff's progress. At the meeting, the Coast Guard directed plaintiff to supply, within five days, an action plan for submitting the 50% design and completing the project by November 20, 2004, and noted that plaintiff's failure to submit the 50% design was "a condition that [was] endangering performance of the contract." In response, plaintiff's project manager, Butch Clayton, indicated that plaintiff planned to submit a 35% design to the Coast Guard on April 2, 2004. Mr. Clayton attached a "tentative design schedule" to his response reflecting that plaintiff would begin working on the design on March 26, 2004, submit the 50% design on April 19, 2004, begin construction on May 13, 2004, submit a 70% design on May 14, 2004, and submit a 100% design on June 4, 2004.

The Coast Guard received plaintiff's 35% design on April 6, 2004, and provided plaintiff with its review comments on April 13, 2004. The Coast Guard also indicated that the design schedule provided by Mr. Clayton was insufficient to meet the contract's requirements, and directed plaintiff to submit a combined design and construction schedule by April 20, 2004.

Contrary to the schedule provided by Mr. Clayton, plaintiff failed to submit its 50% design by April 19, 2004. Nor did plaintiff submit the required combined design and construction schedule. In a May 6, 2004 letter, Ms. Broussard indicated that the Coast Guard considered plaintiff's "failure to submit a proper progress schedule and failure to perform any work on site a condition that [was] endangering performance of [the] contract." She also noted that plaintiff's failure to submit a 50% design resulted in plaintiff missing the deadline for the 90% design set forth in the contract. Ms. Broussard expressed the Coast Guard's concern that these missed deadlines might signal plaintiff's inability to complete the project by the November 20, 2004 deadline. Responding to Ms. Broussard's letter, Mr. Clayton indicated that plaintiff's revised design and construction schedule reflected that it would submit the 50% design within ten working days and that it would complete the project by November 20, 2004. Indeed, the attached schedule anticipated approval of the 50% design and receipt of the notice to proceed on May 28, 2004, delivery of the building to the project site on July 13, 2004, and completion of work by November 19, 2004. The Coast Guard approved the proposed schedule.

Electronic-mail messages on May 18, 2004, and May 20, 2004, reflected that plaintiff was in the process of incorporating the Coast Guard's review comments on the 35% design into the 50% design. In fact, in the May 20, 2004 message, Mr. Clayton indicated that plaintiff planned to submit the 50% design the following day. In neither message did plaintiff object to

any of the Coast Guard's comments on the 35% design.

Plaintiff apparently submitted a 50% design sometime between May 21, 2004, and June 1, 2004.  In its June 1, 2004 review comments, the Coast Guard indicated that plaintiff "failed to submit electrical and mechanical drawings in accordance with" the contract and that there were issues in the "civil and structural areas."  In a June 8, 2004 letter, Ms. Broussard stated that because plaintiff did not yet have an approved 50% design, the Coast Guard was concerned that plaintiff was not "making significant progress" on the project.  Mr. Clayton later informed the Coast Guard that plaintiff was "working on" the Coast Guard's comments and averred that if the Coast Guard approved plaintiff's revised 50% design and issued the notice to proceed by June 25, 2004, plaintiff could complete the project by the November 20, 2004 deadline.  Plaintiff resubmitted its 50% design, and on June 30, 2004, the Coast Guard provided its review comments to plaintiff and approved the design "as noted."

One week later, in a July 7, 2004 letter, Ms. Broussard informed plaintiff that based upon the Coast Guard's previous correspondence with plaintiff, the Coast Guard would be "holding 10% retainage on each invoice" plaintiff submitted, "until significant progress [was] made to enable [plaintiff] to get back on schedule and all required submittals [were] properly submitted." Indeed, Ms. Broussard returned plaintiff's third invoice, unprocessed, on July 8, 2004, noting: "[W]e will continue to withhold retainage until a revised schedule is received showing that you can complete the work on time, and all previous review comments are incorporated."

Although the Coast Guard approved plaintiff's 50% design on June 30, 2004, it apparently did not issue a notice to proceed with construction at that time.  In a July 8, 2004 electronic-mail message, Mr. Clayton indicated that the schedule he attached to the message was based on the Coast Guard's full approval of the 50% design and issuance of the notice to proceed by July 16, 2004.  Notably, the schedule reflected that plaintiff anticipated delivery of the building on September 2, 2004, and completion of work by November 19, 2004.

Mr. Clayton also attached plaintiff's responses to the Coast Guard's 50% design review comments to his message.  He noted that some of the comments had been incorporated into the 50% design and that others would be incorporated into the 90% design.  For almost all of the comments at issue, plaintiff either noted that it would comply with the comment or made no response whatsoever.[2]  In his message, Mr. Clayton requested that the Coast Guard review

---

[2]  The exception was plaintiff's response to the following mechanical system general comment:

> HVAC system shown on drawing does not conform with that proposed in K-Con's proposal letter of 8 December 2003, Revised 13 January 2004; Division 15 section indicated that the design was incorporating two 60,000 BTU Trane 90% efficient split system gas furnaces.  That shown on the drawing is a single furnace/air-handling system with two stage heating system.  Considering the harsh

plaintiff's responses, indicate its concurrence, and issue the notice to proceed.  The Coast Guard eventually issued the notice to proceed and it appears that plaintiff began construction sometime before October 29, 2004, the date the building was delivered to the project site.

The beginning of construction did not, however, lay to rest the Coast Guard's concerns with plaintiff's design.  During an October 19, 2004 telephone conversation, Ms. Broussard noted that plaintiff's initial 90% design was incomplete and Mr. Clayton agreed to submit a complete 90% design within ten days.  Ms. Broussard also advised Mr. Clayton that plaintiff should not begin construction on any unapproved items.  Finally, Ms. Broussard addressed the possibility that based on plaintiff's September 9, 2004 schedule, plaintiff would not meet the November 20, 2004 deadline, and requested that Mr. Clayton furnish information explaining what steps plaintiff would take to get back on schedule.

In mid-November 2004, plaintiff provided the Coast Guard with another schedule, which indicated a project completion date of December 28, 2004.  In response, Ms. Broussard informed plaintiff:

> Despite your failure to complete the contract in the allotted time, I have determined it is in the Government's best interest to forbear from terminating your contract for default and permit you to continue work under the contract. Continuation of performance is solely to mitigate damages and impacts to the Government and is not to be construed as a waiver of the Government['s] rights and remedies under the terms of the contract.  You will be assessed liquidated damages in the amount of $589.00 per day until all work is complete and beneficial occupancy has occurred.

Despite its agreement to submit a complete 90% design within ten days of October 19, 2004, plaintiff failed to do so.  Further, plaintiff represented to the Coast Guard that it would send the 90% design to the Coast Guard on November 15, 2004, and November 22, 2004, but failed to meet those deadlines.  In a December 1, 2004 letter, Ms. Broussard cautioned plaintiff that "any work completed prior to an approved design [would] be at [plaintiff's] own risk" because the Coast Guard was not obligated "to pay for unapproved work."  She further advised plaintiff that the Coast Guard would not process plaintiff's invoices until it received the 90% design and reminded plaintiff that since it had not met its November 20, 2004 deadline to complete the project, the Coast Guard was assessing liquidated damages of $589 per day until it

---

> winter climates at Port Huron the two systems originally proposed would be the preferred method to treat the heating requirement (if one system goes down at least there is partial heat to keep the building tempered).

Plaintiff responded:  "Due to the small size of the heating system for this space we recommend using just [one] system.  If the heating system fails then you could open the door to the adjoining space and blow air into the space.  Please discuss with contractor and advise."

accepted the building.  Finally, she noted that if plaintiff did not cure the issues she raised within ten days, the contract was subject to termination by default.

Five days later, Mr. Clayton inquired about the assessment of liquidated damages.  Ms. Broussard responded that liquidated damages were part of the contract and would be "assessed accordingly."  She explained:

> [Y]our revised proposal of 13 January 2004 does identify specific technical sections within the Request for Proposal in which you took exception.  There was no mention of liquidated damages or any other contract requirements.  Upon resolution of those items listed in your letter of 13 January 2004, the contract was awarded.  Once awarded, it is not within your authority to exclude or take exception to our contract requirements.  You are bound by all the contract requirements and it will be enforced accordingly.

The Coast Guard ultimately declared the project to be substantially complete on May 23, 2005, and took possession of the building on that date.

## C.  Procedural History

Plaintiff submitted a claim to Ms. Broussard on July 28, 2005, seeking payment in the amount of $118,950.68 that it alleged was wrongfully withheld on the contract.  It argued that the Coast Guard's refusal to pay the balance of the contract price and assessment of liquidated damages constituted a breach of contract.  Further, plaintiff contended that the assessment of liquidated damages was inappropriate because it:

> was not the sole cause of any alleged delays, any alleged delays by [it were] concurrent with delays caused by the government, the government failed to issue extensions to the completion date as a result of changes to the contract by the government, and the liquidated damages [were] an impermissible penalty.

Ms. Broussard acknowledged her receipt of plaintiff's claim in an August 1, 2005 letter, but indicated that she was unable to render a decision on that claim because plaintiff did not "provide supporting documentation to support [its] assertion that liquidated damages were wrongly assessed . . . ."  She requested that plaintiff resubmit its claim with a "detailed analysis and supporting documentation."  Two days later, plaintiff responded that the relevant "documentation consists of all correspondence and any and all other documents contained in [the] contract file in [Ms. Broussard's] possession."

Ms. Broussard issued a decision denying plaintiff's claim on September 12, 2005.  She found that there was "no evidence" to support plaintiff's claim, explaining that the Coast Guard's records reflected that plaintiff was "the sole cause of missing the contract completion date" and that there was no delay by the Coast Guard, that plaintiff had not provided any information

demonstrating that it was not responsible for the delay, and that the Coast Guard was "not aware of any event or occurrence that would excuse [plaintiff's] late[] performance." She also noted that the Coast Guard had returned two invoices to plaintiff, unpaid, due to the continuing assessment of liquidated damages; the Coast Guard ultimately had assessed liquidated damages for 186 days, in a total amount of $109,554; the Coast Guard had paid plaintiff $412,885.62 of the $529,271.47 total contract value; and therefore, the Coast Guard owed plaintiff $6,831.85, payable upon the receipt of a proper invoice.

On September 30, 2005, shortly after Ms. Broussard denied plaintiff's claim, plaintiff filed suit in this court. In its complaint, plaintiff alleged that during contract performance, the Coast Guard "changed and modified" the contract by, among other things, improperly reviewing and approving its submitted drawings and by directing plaintiff to perform work not required by the contract. However, plaintiff averred, the Coast Guard did not extend the time for performance of the contract. Plaintiff therefore requested the following relief: (1) a finding that the assessment of liquidated damages was "improper and without cause," (2) the remission of liquidated damages and payment of $109,554, (3) interest on the amount withheld as liquidated damages, and (4) attorney's fees and costs. On January 25, 2006, defendant filed a counterclaim, alleging that the Coast Guard should have only assessed 183 days of liquidated damages, that the total amount of liquidated damages owed by plaintiff was therefore $107,787, and that the Coast Guard had withheld approximately $106,347 from payments to plaintiff as liquidated damages. Defendant therefore sought to recover from plaintiff $1,440–the balance of the liquidated damages assessed by the Coast Guard.

On December 15, 2006, while this suit was pending, plaintiff submitted a second claim to Ms. Broussard, demanding, based on the contract's changes clause, "payment of $196,126.38 . . . for additional work and an extension until May 25, 2006 due to delays as a result of direction by the government" on the project. Specifically, plaintiff contended that the Coast Guard delayed work at the beginning of the project while it considered whether to amend the contract specifications. It also alleged that the Coast Guard made a variety of changes to the contract via its review comments on plaintiff's 35% and 50% designs. Ms. Broussard denied plaintiff's claim on January 17, 2007, finding that there was no evidence to support plaintiff's allegations. Plaintiff filed an amended complaint on March 18, 2007, to add allegations related to its claim that the Coast Guard changed the contract without paying for the additional work or providing a time extension.

After discovery, plaintiff moved for summary judgment on three issues: whether the liquidated damages rate specified in the contract constituted an unenforceable penalty; whether remission of some liquidated damages was appropriate; and whether plaintiff was entitled to a change order. The court denied plaintiff's motion in an August 19, 2011 Opinion and Order, concluding that the liquidated damages rate was not an unenforceable penalty, that plaintiff had not established an excusable delay that would lead to the remission of some or all of the liquidated damages, and that there was a genuine issue of material fact regarding whether the Coast Guard had sufficient notice that plaintiff considered certain design review comments to be

change orders.

As noted above, this is one of three breach-of-contract cases before the court involving plaintiff and the Coast Guard. The court issued a summary judgment ruling in the Elizabeth City case in January 2011, K-Con Bldg. Sys., Inc. v. United States, 97 Fed. Cl. 41 (2011), which was followed by a two-week trial in December 2011. After trial, it was necessary for the court to rule on plaintiff's motion for sanctions. K-Con Bldg. Sys., Inc. v. United States, 106 Fed. Cl. 652 (2011). Then, in November 2012, the court issued a summary judgment ruling in the St. Petersburg case. K-Con Bldg. Sys., Inc. v. United States, 107 Fed. Cl. 571 (2012). After the court issued the latter decision, the parties engaged in settlement discussions through the court's alternative dispute resolution program. Those discussions revealed several issues that required resolution prior to any settlement, leading the parties to file the appropriate motions in each case.

In this case, defendant filed a motion to dismiss and for summary judgment. Defendant contends that the court should dismiss plaintiff's claim for the remission of liquidated damages on the basis of a time extension because plaintiff did not submit a valid claim to Ms. Broussard prior to filing suit. Defendant further contends that it is entitled to summary judgment on plaintiff's remaining claim for constructive change because plaintiff cannot establish that it provided the Coast Guard with the required written notice or that it suffered damages as a result of the Coast Guard's purported changes. The parties have completed briefing on defendant's motion and, finding oral argument unnecessary, the court is prepared to rule.

## II. DEFENDANT'S MOTION TO DISMISS

Defendant initially moves to dismiss plaintiff's remaining liquidated damages claim for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). However, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974). If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

In its motion to dismiss, defendant argues that plaintiff's "claims for remission of liquidated damages on the basis of entitlement to a time extension" should be dismissed for lack of jurisdiction because plaintiff "failed to submit a valid claim to the contracting officer before commencing suit on that claim." Mot. 1. To be valid, a claim must satisfy the procedural and substantive requirements set forth in the Contract Disputes Act of 1978 ("CDA") and its implementing regulations. See generally 41 U.S.C. § 7103 (Supp. IV 2011); Federal Acquisition Regulation ("FAR") 52.233-1(c). In general, the claim must be in writing, be submitted to the

contracting officer within six years of its accrual, and include a request for monetary or other relief as a matter of right.  Id.  Although the claim need not "be submitted in any particular form or use any particular wording," it must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."  Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987); see also Transam. Ins. Corp. v. United States, 973 F.2d 1572, 1578 (Fed. Cir. 1992) (noting that "certain 'magic words' need not be used and that the intent of the 'claim' governs").  To determine whether a contractor's demand constitutes a claim, a court must engage in a "logical, common sense analysis" of the demand, Transam. Ins. Corp., 973 F.2d at 1579, taking into consideration the facts and circumstances of the case, Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc).

### A.  The July 28, 2005 Claim Letter

Defendant first asserts that plaintiff's July 28, 2005 claim letter lacked any explanation for why plaintiff might be entitled to a time extension that would support the remission of liquidated damages, and therefore could not be a valid claim for a remission of liquidated damages based on a time extension.  Plaintiff agrees with defendant, but appears to take it one step further, contending that the July 28, 2005 claim was invalid in its entirety.  The court cannot agree that the entire claim was invalid.

In its claim letter, plaintiff contended that the assessment of liquidated damages was inappropriate because there were government-caused delays for which it was not granted a time extension and because the assessed liquidated damages amounted to an impermissible penalty.  The latter argument provided Ms. Broussard with adequate notice that plaintiff challenged the legal propriety of the assessment of liquidated damages, rendering plaintiff's challenge of the legal propriety of the assessed liquidated damages a valid claim.  Plaintiff's reliance on the fact that Ms. Broussard dismissed the entire claim for lack of supporting evidence to support its assertion that the entire claim is invalid is unjustified; a contracting officer's conclusion that a claim is unsupported does not mean that the contracting officer lacked adequate notice of the basis of that claim.

In sum, the court concludes that plaintiff's July 28, 2005 claim letter contained a valid claim challenging the legal propriety of the assessed liquidated damages, but lacked a valid claim for the remission of liquidated damages resulting from the Coast Guard's failure to extend the time for contract performance to compensate for Coast Guard-caused delays.[3]  Accordingly, the

---

[3]  This holding precludes the court's consideration of plaintiff's contention that the court lacks jurisdiction to entertain defendant's counterclaim.  Specifically, plaintiff argues that because its July 28, 2005 claim was invalid in its entirety, Ms. Broussard lacked the authority to issue a decision on that claim, rendering her September 12, 2005 decision–including her purported assessment of liquidated damages in that decision–invalid.  Plaintiff therefore asserts that there was no government claim upon which defendant could base its counterclaim.  However, because the July 28, 2005 claim was not invalid in its entirety, Ms. Broussard's

court does not possess jurisdiction to consider plaintiff's claim for the remission of liquidated damages based on unawarded time extensions, to the extent that the claim was based on the July 28, 2005 claim letter.

## B.  The December 15, 2006 Claim Letter

Defendant also asserts that plaintiff's December 15, 2006 claim letter cannot provide the basis for plaintiff's claim in this court that it is entitled to the remission of liquidated damages resulting from unawarded time extensions because plaintiff submitted the letter to the contracting officer while litigation on the claim was pending.  Normally, "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation.  That exclusive authority divests the contracting authority to issue a final decision on the claim."  Sharman Co. v. United States, 2 F.3d 1564, 1571-72 (Fed. Cir. 1993) (citations omitted), overruled on other grounds by Reflectone, Inc., 60 F.3d at 1572.  Thus, if a contractor submits a new claim to the contracting officer while its prior claim is in litigation, and the new claim "arise[s] from the same operative facts, claim[s] essentially the same relief, and merely assert[s] differing legal theories for that recovery," Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003), the contracting officer lacks the authority to act on the new claim.

As noted above, in its July 28, 2005 claim letter, plaintiff sought the remission of liquidated damages based, in part, on its perceived entitlement to time extensions.  After Ms. Broussard denied its claim, plaintiff filed suit in this court seeking the remission of liquidated damages on the same grounds.  While that litigation was pending, plaintiff submitted its December 15, 2006 claim letter to Ms. Broussard seeking, among other things, a time extension for contract performance.  The granting of such a time extension would necessarily result in the remission of liquidated damages, meaning that plaintiff was seeking some of the same relief in its

---

September 12, 2005 decision constitutes a valid government claim for liquidated damages, providing the court with jurisdiction over defendant's counterclaim.  Moreover, there may be another basis for defendant's counterclaim:  the assessment of liquidated damages reflected in the invoices that the Coast Guard returned to plaintiff unpaid.  See Placeway Constr. Corp. v. United States, 920 F.2d 903, 906-07 (Fed. Cir. 1990) (holding that the contracting officer's assertion of a right of set off by declining to release the balance of the contract price is a government claim), superseded in part by statute, Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub. L. No. 102-572, § 907(b), 106 Stat. 4506, 4519 (permitting the United States Court of Federal Claims to render judgment in nonmonetary disputes arising under the CDA); Sun Eagle Corp. v. United States, 23 Cl. Ct. 465, 480 (1991) ("[A] claim for liquidated damages is the quintessential government claim.").  But see Greenhill Reforestation, Inc. v. United States, 39 Fed. Cl. 683, 687 (1997) (holding that a letter from a contracting officer explaining the basis for the government's partial payment was insufficient to constitute a government claim because it was "no more than a tentative determination").  Because the returned invoices and related documents are not in the record, however, the court cannot determine whether they are sufficient to constitute government claims.

December 15, 2006 claim letter that it was already seeking in this court. As a result, Ms. Broussard was divested of the authority to consider plaintiff's December 15, 2006 request for a time extension. And, because plaintiff did not present a valid claim to Ms. Broussard, the court lacks jurisdiction to entertain it.

Plaintiff attempts to avoid this conclusion by arguing that because the invalidity of its July 28, 2005 claim deprived the court of jurisdiction to entertain its claim for the remission of liquidated damages based on unawarded time extensions, that claim was not technically in litigation at the time it submitted its December 15, 2006 claim letter to Ms. Broussard. Thus, plaintiff asserts, Ms. Broussard had the authority to consider that claim. Plaintiff is mistaken. The fact that the court subsequently determined that it lacked jurisdiction over the claim does not negate the fact that the claim was in litigation when plaintiff submitted its December 15, 2006 claim letter to Ms. Broussard–the existence of jurisdiction is not a prerequisite for a claim to be "in litigation." Moreover, the entirety of plaintiff's July 28, 2005 claim was not invalid; in its claim letter, plaintiff advanced a valid claim for the remission of liquidated damages based on its contention that the liquidated damages rate constituted an impermissible penalty. As a result, the court possessed jurisdiction to entertain that claim during the pendency of the suit. Because plaintiff sought the same relief–the remission of liquidated damages–in its December 15, 2006 claim for a time extension, only under a different legal theory, Ms. Broussard was divested of the authority to consider that claim.

In sum, the court lacks jurisdiction over plaintiff's claim for the remission of liquidated damages to the extent that the claim is premised on an entitlement to time extensions. Accordingly, the court grants defendant's partial motion to dismiss.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant next contends that it is entitled to summary judgment on plaintiff's remaining claim, which concerns the Coast Guard's purported changes to the contract. Specifically, defendant contends that plaintiff cannot establish that it provided the Coast Guard with the written notice required by the contract's changes clause or that it suffered damages as a result of the purported changes. Defendant's first argument is dispositive.

The contract's changes clause provides:

(b) Any other written or oral order (which, as used in this paragraph (b), includes direction, instruction, interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; Provided, that the Contractor gives the Contracting Officer written notice stating–

(1) The date, circumstances, and source of the order; and

(2)  That the Contractor regards the order as a change order.

(c)  Except as provided in this clause, no order, statement, or conduct of the Contracting Officer shall be treated as a change under this clause or entitle the Contractor to an equitable adjustment.

(d)  If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing.  However, . . . no adjustment for any change under paragraph (b) of this clause shall be made for any costs incurred more than 20 days before the Contractor gives written notice as required.  . . .

(e)  The Contractor must assert its right to an adjustment under this clause within 30 days after . . . the furnishing of a written notice under paragraph (b) of this clause, by submitting to the Contracting Officer a written statement describing the general nature and amount of the proposal, unless this period is extended by the Government.  The statement of proposal for adjustment may be included in the notice under paragraph (b) of this clause.

FAR 52.242-14, cited in Pl.'s App. 38.  Although the changes clause describes a twenty-day time limit for providing notice to the contracting agency, the general rule described in the case law for evaluating compliance with the clause's notice requirement is more flexible:  "Written notice as to constructive changes must be supplied by the contractor before such time that the Government would suffer if not apprised of the facts."  Calfon Constr., Inc. v. United States, 18 Cl. Ct. 426, 438 (1989), aff'd on other grounds, 923 F.2d 872 (Fed. Cir. 1990) (unpublished table decision); accord Hoel-Steffen Constr. Co. v. United States, 456 F.2d 760, 767-68 (Ct. Cl. 1972) ("To adopt [a] severe and narrow application of the notice requirements, . . . would be out of tune with the language and purpose of the notice provisions, as well as with this court's wholesome concern that notice provisions in contract-adjustment clauses not be applied too technically and illiberally where the Government is quite aware of the operative facts.").  Thus, "[i]f the contracting officials have knowledge of the facts or problems that form the basis of a claim and are able to perform necessary fact-finding and decisionmaking, the Government is not prejudiced by the contractor's failure to submit a precise claim at the time a constructive change occurs."  Calfon Constr., Inc., 18 Cl. Ct. at 438-39.  Conversely, "[w]here contractor silence would foreclose less costly alternative solutions or the ability of the Government to avoid contractor claims, timely notice is required."  Id. at 439.

The issue of whether plaintiff satisfied the requirements of the contract's changes clause was first presented to the court in plaintiff's motion for summary judgment.  In its motion, plaintiff contended that it was entitled to a change order for each of the Coast Guard's comments that imposed a requirement not included in the contract, focusing on specific comments on

plaintiff's 35% and 50% designs.  In response, defendant argued that plaintiff was not entitled to the requested change orders because plaintiff never informed the Coast Guard that it believed that the review comments, or the direction to incorporate the review comments into the designs, constituted changes to the contract's requirements.  The court concluded that a genuine issue of material fact existed "as to whether the Coast Guard had sufficient notice that plaintiff considered the 35% and 50% design review comments to constitute changes to the contract":

> On one hand, there is evidence suggesting that the Coast Guard, by directing plaintiff to incorporate the comments into the design, knew that it was making changes to the contract.  On the other hand, there is evidence suggesting that the Coast Guard, presented with plaintiff's statements that it was incorporating the review comments into the design, was not aware that plaintiff considered those comments to be changes.

K-Con Bldg. Sys., Inc., 100 Fed. Cl. at 31.  The court therefore declined to grant plaintiff summary judgment in its favor.  Defendant now renews its opposition to plaintiff's constructive change claim in its own motion for summary judgment.[4]  It contends that there is no evidence that plaintiff provided written notice at any time to the Coast Guard that it objected to the Coast Guard's comments regarding its designs, and, in fact, that the evidence reflects that plaintiff repeatedly indicated its intent to incorporate the review comments into its designs without stating any objections.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine if it "may reasonably be resolved in favor of either party."  Id. at 250.  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  The nonmoving party then bears the burden of showing that there are genuine issues of material fact for trial.  Id. at 324.  Both parties may carry their burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  RCFC 56(c)(1).  Because defendant asserts that plaintiff is unable to produce evidence to support the fact that it

---

[4]  The fact that the court denied plaintiff's motion for summary judgment does not preclude the court from considering defendant's motion for summary judgment.  In addressing plaintiff's motion, the court concluded, based on the evidence before it, that there was a genuine issue of material fact regarding whether the Coast Guard had sufficient notice that plaintiff considered the design comments to be change orders.  Defendant's motion presents a more focused issue–whether plaintiff provided written notice of the changes to the Coast Guard.

provided written notice of changes to the Coast Guard, the burden shifts to plaintiff to establish that there is a genuine issue of material fact regarding its satisfaction of the notice requirements.

Plaintiff first argues that providing written notice of the alleged changes to the Coast Guard would have been futile because the Coast Guard would have directed its incorporation of the design review comments regardless of its objections.[5]  The Coast Guard's reaction to any objections raised by plaintiff, however, is irrelevant.  Under the plain language of the contract's changes clause, plaintiff was required to provide written notice to the Coast Guard that it considered a design review comment to be a change order.[6]  See FAR 52.242-14; see also Calfon Constr., Inc., 18 Cl. Ct. at 438 ("Written notice as to constructive changes must be supplied by the contractor . . . .").  Plaintiff has not provided any legal support for its grafting of a futility exception to the contract's changes clause.

Plaintiff also argues that even if written notice was required, it did provide the Coast Guard with such notice, citing its January 19, 2004 letter and January 27, 2004 electronic-mail message advising the Coast Guard that its proposal would take precedence over the specifications and drawings contained in the solicitation.  However, both pieces of correspondence predated the Coast Guard's purported changes to the contract.  A contractor cannot notify the government of a change if the change has not yet been ordered.  Indeed, the contract's changes clause specifically requires the written notice to contain "[t]he date, circumstances, and source of the order," FAR 52.242-14, facts that were not, and could not have been, included in the January 2004 correspondence relied upon by plaintiff.

To recover on its claim that the Coast Guard ordered changes to the contract without providing any compensation for those changes, plaintiff must show that it complied with the requirements of the contract's changes clause.  However, plaintiff has failed to cite any evidence that it provided the Coast Guard with the required written notice.  Accordingly, summary judgment in defendant's favor on plaintiff's constructive change claim is appropriate.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's partial motion to dismiss and **DISMISSES** for lack of jurisdiction plaintiff's claim for the remission of liquidated damages

---

[5]  Plaintiff did respond in writing to the Coast Guard's mechanical system general comment concerning plaintiff's proposed use of one furnace for the HVAC system in its 50% design.  See note 2, supra.  However, plaintiff does not contend that its response, which merely explains the reason for its deviation from its proposal and requests a discussion with the Coast Guard, satisfied the written notice requirement of the contract's changes clause.

[6]  Indeed, had plaintiff provided the Coast Guard with such written notice, the Coast Guard would have had the opportunity to resolve the issue to plaintiff's satisfaction, rendering litigation unnecessary.

-14-

premised on an entitlement to time extensions.  In addition, the court **GRANTS** defendant's motion for summary judgment on plaintiff's constructive change claim and **DISMISSES** that claim with prejudice.  This decision disposes of all of plaintiff's remaining claims, leaving defendant's counterclaim as the only claim requiring resolution.  Finding that there is no just reason for delay, the court directs the clerk to dismiss plaintiff's complaint and enter judgment against plaintiff on its claims pursuant to RCFC 54(b).  By **no later than Friday, February 28, 2014**, the parties shall file a joint status report suggesting a schedule for further proceedings on defendant's counterclaim.

      **IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge